UNITED STATES BANKRUPTCY COURT
CENTRAL DIVISION, DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>KIMMY R. JACKSON,<br><br>Debtor | Docket No.: 10-11716<br><br>Chapter 13 |
| Kimmy R. Jackson<br>                              Plaintiff,<br>v.<br>ING Bank, FSB;<br>Bank of America Home Loans;<br>Portnoy and Greene, PC;<br>Harmon Law Offices PC; and<br>Capital One National Association;<br>                              Defendants | ADVERSARY PROCEEDING<br><br>No. _____ |

## VERIFIED COMPLAINT

NOW COMES Kimmy R. Jackson, debtor/plaintiff in the above captioned matters, and complains of the defendants as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Kimmy R. Jackson (hereinafter "Jackson") is a natural person residing at 700 N. Wellman Avenue, Unit 316; N. Chelmsford, MA ("the property"). She commenced the present bankruptcy case under chapter 7 on February 22, 2010 ("the petition date").

2. At all times relevant, ING Bank, FSB, was a federal savings bank with headquarters in Wilmington, DE.

3. In February, 2012, ING was acquired by Capital One National Association, which has headquarters in McLean, VA. As the successor in interest to ING, Capital One is liable to Jackson to the same extent that ING would be.

4. Harmon Law Offices PC is a law firm with offices in Newton, MA.

5. Portnoy and Greene, PC, is a law firm with offices in Needham, MA.

6. Bank of America Home Loans is a national bank with headquarters in Charlotte, North Carolina.

7. Venue of the bankruptcy case is appropriate in this court pursuant to 28 USC §1408. Venue of the instant complaint is appropriate pursuant to 28 USC §1409.

8. This court has jurisdiction of the bankruptcy case and this complaint pursuant to 28 USC §1334.

KJ

9     Pursuant to 28 USC §157, the district court has referred all bankruptcy cases and related proceedings to the bankruptcy judges of this district.

10    This is a core proceeding within the meaning of that statute, and the court has jurisdiction to enter a final judgment. In the event that any claim is determined to be non-core, the plaintiff assents to entry of final judgment by the bankruptcy court.

## Factual Allegations

11    On the petition date, Jackson was living in New Bedford, MA. She had moved there in February, 2009. Prior to that date she was living in the N. Chelmsford property, which is a condominium unit.

12    She acquired the property in 2003 by deed. She paid the purchase price by giving a mortgage to National City Mortgage.

13    In 2004, she refinanced that mortgage with America's Wholesale Lender ("AWL"). The mortgage document identified Mortgage Electronic Registration Systems as the mortgagee as nominee for AWL. Upon information and belief, AWL is a subsidiary of, or is otherwise related to, Countrywide Home Loans.

14    In 2008, she began to have financial difficulties. As a result, she fell into arrears on the mortgage payments, and foreclosure proceedings were commenced.

15    On or about August 18, 2008, "Countrywide Home Loans, Inc. For the Benefit of ING Bank, FSB" (hereinafter "Countrywide") commenced a Servicemembers Civil Relief Act action in the Land Court. Judgment was issued on or about December 9, 2008, in that action.

16    On December 15, 2008, an agent of Countrywide made entry onto the property to foreclose.

17    In January, 2009, Jackson was contacted by an agent of Lillian Montalto Realty, who told Jackson that she would have to move and offered Jackson $4,000 as a "cash for keys" inducement. Jackson accepted the offer, but her moving costs were well in excess of that amount.

18    On January 30, 2009, a date that is after the foreclosure sale and well after foreclosure proceedings were intiated, MERS assigned the mortgage to Countrywide.

19    On February 4, 2009, a "Foreclosure Deed by Corporation" was executed by David Perez, allegedly an Assistant Vice President of Countrywide, which was subsequently recorded at the Registry of Deeds.

20    Documents attached to the Foreclosure Deed indicate that the foreclosure sale was conducted by the Harmon Law Offices firm.

21    Subsequent to the foreclosure, Jackson was contacted by JP Morgan Chase concerning a

deficiency on a second mortgage.

22. Lacking the means to pay the Chase deficiency, Jackson commenced the present bankruptcy case under chapter 7. She received a discharge on May 25, 2010, and the case was closed on January 5, 2011.

23. On or about January 19, 2012, Jackson received communications from the Portnoy and Greene Law Firm, indicating that Jackson was in default on the mortgage and that ING Bank, FSB, intended to foreclose the mortgage.

24. On or about January 23, 2012, ING sent Jackson a letter telling her that the monthly mortgage payment was $1,826, including escrow payment.

25. Jackson also received numerous letters from Bank of America, thanking her for her "inquiry", even though Jackson had never sent any inquiry letters to Bank of America.

26. Jackson, now living in Quincy, was surprised by the foregoing because she thought the mortgage had been foreclosed in 2008.

27. Upon investigation, Jackson found out that Countrywide was not the mortgagee at the time of the 2008 foreclosure because MERS (the original mortgagee) had never assigned its rights as mortgagee to any one prior to the initiation of foreclosure proceedings. Thus Jackson believes that the foreclosure sale was ineffective and void.

28. Jackson also found out that on February 22, 2012, Countrywide, "for the benefit of ING Bank, FSB" had assigned the mortgage to ING Bank, FSB. Jackson was surprised by this as well, since Countrywide was acquired by Bank of America in 2008 and, upon information and belief, ceased to exist as a separate entity.

29. Jackson also found out that the N. Chelmsford property was vacant and had been vacant since 2009 because Countrywide had not sold the property nor rented it to a tenant. Jackson was informed by a next door neighbor, and therefore believes, that Countrywide <u>could not</u> sell it despite efforts to do so because it knew that there was a title problem (a/k/a, an "Ibanez" problem).

30. Believing that she was still the owner of the N. Chelmsford property, Jackson moved back to it and as of the date of this complaint, had resumed full possession and occupancy of the property.

31. Portnoy and Greene commenced a new Servicemembers Civil Relief Action in the Land Court on or about March 19, 2012, naming ING Bank, FSB, as the plaintiff.

32. In order to stop Portnoy and Greene from foreclosing, Jackson commenced an action, pro se, in the Superior Court for an injunction and other relief. A motion for a preliminary injunction was denied, however.

33. Jackson also became aware of the need to amend her schedules in the 2010 bankruptcy case since the void foreclosure resulted in her having a property interest that should be disclosed. She reopened her case and has properly amended her schedules.



34. Subsequent to the 2010 bankruptcy case, Jackson's financial situation improved such that she can now cure the arrears that existed at the time of the 2008 foreclosure. To do so, she has converted the case to chapter 13 and commenced the present adversary proceeding. She has also voluntarily dismissed the Superior Court matter, without prejudice.

35. By this complaint, Jackson seeks a judgment finding and declaring that the 2008 foreclosure was wrongful and void because it was done by an entity with no legal right to foreclose.

### Count I – Wrongful Foreclosure
(All defendants except Portnoy and Greene)

36. When said defendants commenced the foreclosure process in 2008, neither Countrywide nor ING were the mortgagee because MERS (the original mortgagee) had never assigned the mortgage.

37. All of the defendants knew or should have known that Countrywide was not the mortgagee.

38. The foreclosure sale in 2008 is void.

### Count II – Fair Debt Collection Practices Act
(All defendants except Portnoy and Greene)

39. For the reasons stated herein, the defendants knew or should have known that they were attempting to collect a debt that they were not entitled to collect.

40. All of the defendants are debt collectors within the meaning of the Massachusetts and Federal Fair Debt Collection Practices Acts.

41. By misrepresenting the amount or character of a debt and falsely asserting a right to collect a debt that was not owed to them, the defendants have violated the Massachusetts and Federal Fair Debt Collection Practices Acts.

### Count III – Deceit and Misrepresentation
(All defendants except Portnoy and Greene)

42. By attempting to collect a debt that they were not entitled to collect, and by wrongfully foreclosing a mortgage that they were not entitled to foreclose, the defendants deceived Jackson by misrepresenting their legal rights and hers.

43. By failing to comply with their contractual, statutory and common law duties, including the fiduciary duty imposed on a foreclosing mortgagee, the defendants deceived Jackson and misrepresented the true facts to her.

KJ

## Count IV – Negligence
### (All defendants except Portnoy and Greene)

44. In foreclosing the mortgage, the defendants had a fiduciary duty to act fairly and in good faith.

45. The facts as alleged herein show that the defendants breached their duty.

46. The breach caused Jackson to suffer damages in the form, among other things, the cost of moving from the property and returning to the property.

## Count V – Deceit, Misrepresentation, FDCPA, and Violation of the Discharge Injunction
### (Portnoy and Greene)

47. On January 19, 2012, Portnoy and Greene sent Jackson a letter stating that it was representing "ING Bank, FSB the present holder of a mortgage from you…", and stating that she was in default "under the terms of a Promissory Note and Mortgage".

48. The letter further stated "You are required to pay the entire mortgage indebtedness, and you are hereby notified that the Mortgage and Note ad immediately due and payable."

49. The letter was signed by an attorney named Suzanne Brunelle.

50. The letter also stated "This firm is a 'debt collector' as defined under the Fair Debt Collection Act and as such we are attempting to collect a debt. Any information obtained will be used for the purpose of debt collection."

51. The letter demanded payment of a total of $276,843.60, including principal, interest, late fees, escrow advances and foreclosure fees. This letter violated the discharge injunction.

52. However, in early 2013, Capital One National Association sent Jackson a 1099-A form, indicating that it had reported to the Internal Revenue Service that the date of its "acquisition or knowledge of abandonment" was January 31, 2012; that the "balance of principal outstanding" was $219,066.07; and that the "fair market value of property" was $160,000.

53. Shortly after receiving the letter, Jackson had several conversations and email communications with attorney Brunelle, who admitted knowing that Jackson had filed a bankruptcy case and received a discharge.

54. The emails all included substantially the same statement as indicated in paragraph 49, above, and admitted knowledge of the bankruptcy discharge.

55. Because the mortgage was not assigned by Countrywide to ING Bank FSB until February 22, 2012, Brunelle's January 19, 2012, letter was false when it claimed that ING Bank, FSB was the "present holder" of the mortgage. Brunelle knew the statement was false because she sent a letter and related documents to the Land Court on March 8, 2012, for the purpose of commencing a new Servicemembers Civil Relief Act proceeding.

However, the letter was originally dated January 19, 2012, but Brunelle marked out the January date and handwrote the March date.

56  By reason of the foregoing, Portnoy and Greene has admitted that its actions are subject to the Fair Debt Collection Practices Act.

### Count VI – Breach of Contract; Wrongful Foreclosure
(All defendants)

57  Under the unambiguous terms of the Promissory Note and Mortgage as well as applicable Massachusetts statutes, the mortgagee/ lender was required to send Jackson notices of default, both prior to the 2008 foreclosure and the 2012 attempt to re-foreclose, affording her the opportunity to cure the default and reinstate the mortgage.

58  At no time did any defendant send Jackson the required notices, thus breaching the contract and applicable Massachusetts statutes.

WHEREFORE Jackson requests relief:
1) Enjoining the defendants, jointly and severally, from any action to complete or reinitate the wrongful foreclosure sale, such as by executing a Memorandum of Sale, a deed, or any other act of that nature;
2) setting aside the foreclosure sale and/or declaring any foreclosure deed to be a nullity;
3) ordering the defendants to provide Jackson with an accounting and affording him an opportunity to cure any default pursuant to the provisions of chapter 13 of the bankruptcy code;
4) damages for violation of the discharge injunction;
5) monetary damages and attorney fees; and
6) such other relief as to the court seems meet and just.

February 18, 2013

          Respectfully submitted,
          Kimmy R. Jackson
          By her attorney,

          /s/   David G. Baker
          David G. Baker, Esq.
          236 Huntington Avenue, Ste. 306
          Boston, MA  02115
          617-340-3680
          BBO# 634889



## VERIFICATION

NOW COMES Kimmy R. Jackson and states under pains and penalties of perjury that she is the plaintiff in the within complaint; that she has read the within complaint; and that all of the facts and circumstances stated herein are true and correct to the best of her knowledge, information and belief.

_____
Kimmy R. Jackson