# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|  |  |
|---|---|
| In re: | Chapter 13 |
| KIMMY R JACKSON | Case No. 10-11716-MSH |
| Debtor |  |

## MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION
## TO CLAIM OF CAPITAL ONE, N.A.

Before me is the objection of Kimmy R. Jackson, the debtor, to the proof of claim filed in her bankruptcy case by Capital One, N.A., docketed as claim number six on the claims register maintained by this court.

**I.   The Facts**

On February 17, 2004, Ms. Jackson executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS") a mortgage on her condominium unit in North Chelmsford, Massachusetts to secure her obligations under a promissory note in the principal amount of $220,000.00 payable to America's Wholesale Lender.[1] The mortgage states, among other things, that MERS "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and that "MERS is the mortgagee under" the mortgage. The mortgage defines "Lender" as America's Wholesale Lender.

Sometime in 2008, Ms. Jackson defaulted under the terms of the note and mortgage. On December 15, 2008, according to a certificate of entry recorded in the Middlesex County North

---

[1] According to the endorsement on the copy of the promissory note attached to Capital One's amended proof of claim, America's Wholesale Lender is a "fictitious business name" of Countrywide Home Loans, Inc.

1

District Registry of Deeds, Robert Scanlon, attorney-in-fact and agent of Countrywide Home Loans, Inc., for the Benefit of ING Bank, FSB ("Countrywide f/b/o ING") made entry onto the condominium property in order to foreclose. Countrywide f/b/o ING subsequently recorded a foreclosure deed of the North Chelmsford condominium unit dated February 4, 2009, in the Middlesex County North District Registry of Deeds.[2] According to an affidavit attached to the foreclosure deed, on December 15, 2008, Countrywide f/b/o ING purchased the condominium unit at a foreclosure sale. In January 2009, Ms. Jackson entered into a "Move Out Agreement" with Countrywide Home Loans Servicing, LP, pursuant to the terms of which she agreed to accept a cash settlement of $3,500.00 and to vacate the condominium unit on or before February 6, 2009. Ms. Jackson did in fact vacate the condominium unit. The Move Out Agreement contained a provision releasing Countrywide f/b/o ING and its successors in interest from any liability for causes of action Ms. Jackson "may have had or may now have" in relation to the promissory note and mortgage.

On February 22, 2010, Ms. Jackson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) commencing this case. Ms. Jackson received her chapter 7 discharge on May 25, 2010, and this case was closed on January 5, 2011. On December 5, 2012, Ms. Jackson moved to reopen this case. On December 21, 2012, Ms. Jackson's motion to reopen was granted.[3]

Ms. Jackson's decision to reopen this case was apparently the culmination of the following events. In January 2012, Ms. Jackson received a letter dated January 19, 2012, from a law firm

---

[2] Both the certificate of entry and the foreclosure deed were recorded on March 13, 2009.

[3] No order has entered or been requested in this case to vacate the chapter 7 discharge already received by Ms. Jackson.

2

stating that she was in default under the terms of the 2004 condominium mortgage and demanding payment of her mortgage loan. Ms. Jackson evidently took this to mean that there had been no foreclosure of her condominium unit and moved back in to the condominium unit in June 2012. Ms. Jackson subsequently received a notice dated June 12, 2012, which stated that a foreclosure sale of her condominium unit was scheduled to take place on July 18, 2012. On July 13, 2012, Ms. Jackson filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. The case was dismissed on July 31, 2012, however, for failure to file required documents. On December 5, 2012, Ms. Jackson moved to reopen this case. Shortly after reopening, Ms. Jackson moved to convert this case to chapter 13 and to reinstate the automatic stay. On January 23, 2013, Ms. Jackson's motion to convert and reinstate the automatic stay was granted.

On February 19, 2013, Ms. Jackson initiated an adversary proceeding against Capital One and a number of other defendants with the filing of a six-count complaint. Count I sought declaratory relief voiding the 2008 foreclosure sale based on Massachusetts law as interpreted by the Massachusetts Supreme Judicial Court ("SJC") in *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d. 40 ( 2011), because Countrywide f/b/o ING was not the mortgagee at the time of the sale. Counts II, III, and IV sought money damages on various federal and state law grounds as a result of the alleged wrongful 2008 foreclosure sale. Count VI asserted a state law cause of action seeking damages flowing from Capital One's alleged failure to follow proper notice procedures prior to its attempt in 2012 to schedule a second foreclosure sale.

On May 3, 2013, an order entered in the adversary proceeding dismissing as against Capital One part of Count II and all of Count III. On July 11, 2013, an order entered in the adversary proceeding dismissing the rest of Count II and Count IV in its entirety as against Capital

One based on, among other things, the release contained in the Move Out Agreement. At this time, only Counts I and VI remain pending against Capital One in the adversary proceeding. [4]

On February 20, 2013, Ms. Jackson amended schedule A (real property) of the schedules of assets and liabilities filed in support of her bankruptcy petition to include the condominium as her asset. On May 30, 2013, Capital One filed its proof of claim asserting a $219,536.85 secured claim against Ms. Jackson. Attached to Capital One's proof of claim are copies of the promissory note, the mortgage, and two mortgage assignments. On October 17, 2013, Capital One filed an amended proof of claim increasing the amount claimed to $295,064.22 and asserting $104,467.71 in arrears. Accompanying Capital One's amended proof of claim are copies of the promissory note (endorsed in blank), the mortgage, two mortgage assignments, a Certificate of National Bank Merger, an accounting of the payment history of the note, and an affidavit stating that Capital One is the current promissory note holder. [5]

The documentation filed with Capital One's amended proof of claim indicates that since the February 17, 2004 loan closing, the promissory note and mortgage have changed hands a number of times. On January 30, 2009, after the 2008 foreclosure, Francis J. Nolan, purporting to

---

[4] Count I challenging the validity of the 2008 foreclosure sale remains technically an unresolved issue in the adversary proceeding. In her objection to Capital One's proof of claim, Ms. Jackson assumes that the 2008 foreclosure sale was void. In its response, Capital One ignores the issue altogether but defends its secured claim as though Ms. Jackson is the owner of the condominium unit. In the adversary proceeding the parties have been ordered to meet in person to discuss stipulating to the entry of judgment that the 2008 foreclosure sale was void. Having received no word as to whether the parties have in fact complied with that order, a show cause order will be issued in the adversary proceeding as to why summary judgment declaring that the 2008 foreclosure sale was void should not enter thereby disposing of Count I of the complaint.

[5] The promissory note attached to Capital One's amended proof of claim contains an endorsement that was not on the copy of the note attached to its original proof of claim. The copies of the mortgage and mortgage assignments attached to Capital One's amended proof of claim are identical to the copies attached to its original proof of claim.

4

be an assistant secretary and vice president of MERS, executed an assignment of the condominium mortgage to Countrywide f/b/o ING. Mr. Nolan's signature was notarized by Paul A. Whelan, a Massachusetts notary public. On February 22, 2012, Kurt Heinl, purporting to be an assistant vice president of Countrywide f/b/o ING, executed an assignment of the mortgage to ING Bank, FSB. Mr. Heinl's signature was notarized by Jeanette R. Atlas, a California notary public. According to the Certification of National Bank Merger attached to Capital One's amended proof of claim, effective November 1, 2012, ING Bank, FSB merged into Capital One. Also attached to Capital One's amended proof of claim is a copy of the promissory note endorsed in blank by David A. Specter, managing director of "Countrywide Home Loans, Inc. doing business under the fictitious business name of America's Wholesale Lender" ("Countrywide d/b/a America's Wholesale Lender") as well as an affidavit of Stephen Witkop, "Authorized Signer" of Capital One, stating that America's Wholesale Lender endorsed the note in blank and that Capital One is the holder of the note.

## II. The Dispute

On July 18, 2013, Ms. Jackson filed her objection to Capital One's proof of claim.[6] While not challenging the validity of the underlying note and mortgage, in her objection Ms. Jackson asserts that: (1) her note to America's Wholesale Lender was not properly negotiated in accordance with MASS. GEN. LAWS ch. 106, Massachusetts's version of the Uniform Commercial Code ("UCC"); (2) MERS lacked the authority to assign her mortgage to Countrywide f/b/o ING; (3) Capital One's proof of claim does not establish the authenticity of the signatures on the

---

[6] Ms. Jackson filed her objection to Capital One's proof of claim before Capital One amended it. Some of the additional documentation and information contained in Capital One's amended proof of claim are in response to Ms. Jackson's objection.

5

mortgage assignments attached thereto or the authority of the signatories; and (4) Capital One's proof of claim does not establish that it is a successor in interest to ING Bank, FSB. As such, according to Ms. Jackson, Capital One has not demonstrated in its proof of claim that it has the authority to enforce the note or mortgage and, absent such a showing, its claim should be disallowed. Ms. Jackson further argues that Capital One's claim should be disallowed because it failed to include a detailed accounting of the promissory note payment history, making it impossible for her to verify the amount claimed. Finally, Ms. Jackson asserts a counterclaim for damages arising out of "Capital One's actions as stated in the Adversary Complaint [that] were unfair and deceptive within the meaning of Chapter 93A of the General Laws of Massachusetts."

Capital One responds that it is the holder of the promissory note and owner of the mortgage and that all transfers of the note and mortgage were made in accordance with and are valid under Massachusetts law. Capital One argues that Ms. Jackson has not presented sufficient evidence to rebut the *prima facie* validity of its amended proof of claim. With respect to the note in particular, Capital One asserts that it does not matter whether it is the holder of the note since Ms. Jackson's personal obligation under the note was discharged when she received her chapter 7 discharge in this case. To this Ms. Jackson responds that notwithstanding her personal liability, Capital One must demonstrate that it is the holder of the note since Massachusetts law requires, as a precondition to foreclosure, that a foreclosing entity own the mortgage and either hold the note or be acting on behalf of the note holder. *See generally Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass. 569, 969 N.E.2d 1118 (2012). Returning Ms. Jackson's volley, Capital One retorts that the law is inapplicable since it is not currently attempting to foreclose and anyway the *Eaton* holding was prospective in its application and the notice of foreclosure sale Ms. Jackson received in June 2012

6

was dated prior to the effective date of the *Eaton* decision.[7]

On October 17, 2013, Capital One filed its amended proof of claim. Of relevance to Ms. Jackson's objection, Capital One attached to its amended claim an endorsed copy of the promissory note, a Certificate of National Bank Merger, evidencing the merger of ING Bank, FSB into Capital One, a seventeen page accounting of the promissory note payment history, and the affidavit of Mr. Witkop. Ms. Jackson was given the opportunity to respond to the additional information contained in Capital One's amended proof of claim and she filed, on November 16, 2013, a supplemental objection to Capital One's amended proof of claim verified under oath. In her supplemental objection, Ms. Jackson asserts the arguments already set forth in her initial objection and makes additional arguments related to the accounting attached to Capital One's amended proof of claim. Ms. Jackson objects to the accounting on the basis that: (1) "escrow advances" added to Capital One's claim improperly include advances other than taxes and that Capital One has failed to demonstrate compliance with 12 U.S.C. § 2609;[8] (2) the total claim amount improperly includes charges for attorneys' fees; and (3) Capital One improperly includes amounts accrued during the time period after Ms. Jackson vacated the condominium unit in early 2009 and before she moved back in in June 2012. Ms. Jackson further argues in her supplemental

---

[7] In *Eaton*, the SJC held that, in order to foreclose, the foreclosing entity must own the mortgage and either hold the note or be acting on behalf of the note holder. *Eaton*, 462 Mass. at 571, 969 N.E.2d at 1121. The SJC ordered that its holding was to be applied prospectively and so it applies only to foreclosure sales where the notice of foreclosure sale had been given after the date of the opinion, June 22, 2012. *Id.* at 569, 969 N.E.2d at 1133. Here, the notice of foreclosure sale was dated June 12, 2012, ten days before the SJC announced the *Eaton* decision.

[8] 12 U.S.C. § 2609 is part of the Real Estate Settlement Procedures Act and is entitled "Limitation on Requirement of Advance Deposits in Escrow Accounts." Section 2609 regulates various aspects of lender escrow accounts including amount, timing, shortage notification, escrow account statements, and penalties for noncompliance with the statute. The penalties provision of the statute states that penalties are to be assessed by the Secretary of the Treasury. 12 U.S.C. § 2609(d).

objection that in a narrative attached to its amended proof of claim Capital One improperly calculated her post-petition payment arrears.[9]

### III. The Law and its Application

#### 1. Legal Framework

Section 101(5) of the Bankruptcy Code defines "claim" to mean:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Even though Ms. Jackson's personal liability under the promissory note has been discharged, "a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). "A bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*" *Id*. The *Johnson* court specifically mentions the right to proceeds from a sale of the mortgaged property and the right to foreclose as falling within the definition of claim in § 101(5). *Id.* According to the *Johnson* court the right to foreclose is an "equitable remedy" within the definition of claim

---

[9] Based on Ms. Jackson's proposed chapter 13 plan she believes that she continues to enjoy the option to retain her condominium unit, cure the arrears, and maintain ongoing payments under the 2004 promissory note pursuant to § 1322(b)(5) of the Bankruptcy Code. In the narrative attached to its amended proof of claim, Capital One denies that this is an option. Nevertheless Capital One includes post-petition promissory note arrears in the narrative in the event Ms. Jackson is able to cure and maintain. While the resolution of this issue may become necessary when it comes time to consider confirming Ms. Jackson's chapter 13 plan, its resolution is not necessary to my ruling on Ms. Jackson's objection to Capital One's claim and I express no opinion on this point at this time.

8

contained in § 101(5)(B). *Id*. Capital One thus has a claim against Ms. Jackson assertible in her bankruptcy case.

A proof of claim filed pursuant to the Federal Rules of Bankruptcy Procedure represents *prima facie* evidence of the validity of the claim. FED. R. BANKR. P. 3001(f); *see also In re Long*, 353 B.R. 1, 13 (Bankr. D. Mass. 2006). The party objecting to the claim must provide "substantial evidence" to refute the *prima facie* validity of the claim, *Long*, 353 B.R. at 13 (citing *United States v. Clifford* (*In re Clifford*), 255 B.R. 258, 262 (D. Mass. 2000)), and if successful, the burden then shifts back to the claimant to demonstrate that the claim is valid, *Id.* (citing *Juniper Dev. Group v. Kahn* (*In re Hemingway Transp., Inc.*), 993 F.2d 915, 925 (1st Cir. 1993)). The claimant must so demonstrate by a preponderance of the evidence. *In re MacMillan*, 02–11808–JMD, 2003 WL 22454871 (Bankr. D.N.H. Oct. 20, 2003) (citing *In re Colonial Bakery, Inc.*, 108 B.R. 13, 15 (Bankr. D.R.I. 1989)).

"In order for a proof of claim to be executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it must satisfy (among other things) two requirements set forth in Rule 3001 itself." *Long*, 353 B.R. at 13. First, "when a claim…is based on a writing, the original or a duplicate shall be filed with the proof of claim." FED. R. BANKR. P. 3001(c). Second, "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." FED. R. BANKR. P. 3001(d). Capital One's claim satisfies these requirements and thus is presumed to be *prima facie* valid.

**2.    Analysis**

Having concluded that Capital One holds a claim asserted in a proof of claim that enjoys the presumption of *prima facie* validity, it is necessary to consider whether Ms. Jackson's claim

9

objection is sufficient to rebut that presumption.

### (i) *Capital One's Authority to Enforce the Promissory Note and Mortgage*

In its amended proof of claim Capital One asserts that it is the holder of the promissory note. Attached to Capital One's amended proof of claim is a copy of the note endorsed in blank by Countrywide d/b/a America's Wholesale Lender as well as the affidavit of Mr. Witkop stating that Capital One is in possession of the original note.

"Under Mass. Gen. Laws ch. 106, the Massachusetts version of the [UCC], a person in possession of a promissory note endorsed in blank is deemed to be the holder of that note with the right to enforce it." *In re Marron*, 455 B.R. 1, 6 (Bankr. D. Mass. 2011) (citing UCC §§ 3-205, 3-301). As such, Capital One's assertion in its amended proof of claim that it holds the note enjoys *prima facie* validity. *See* FED. R. BANKR. P. 3001(f). In her objection, Ms. Jackson makes an unsupported claim that the note was not properly negotiated within the meaning of article three of the UCC. Ms. Jackson's position falls short of the standard required to rebut the presumption of *prima facie* validity of Capital One's Amended Claim. "'Substantial evidence' entails more than bare assertions of error" and "consists of evidentiary-quality material which, if accepted, would qualify or contradict the claimant's asserted rights." *In re Perron*, 474 B.R. 310, 313-14 (Bankr. D. Me. 2012).

In its amended proof of claim, Capital One also asserts that it is the owner of the mortgage and attaches a copy of the mortgage along with copies of sequential mortgage assignments and evidence of the Capital One-ING Bank merger in order to establish a chain of ownership. Ms. Jackson's objection appears to be based on assertions that one or more of the mortgage assignments is void.

Before considering the merits of Ms. Jackson's objection to Capital One's mortgage claim, it is necessary to consider whether Ms. Jackson has standing to raise it in the first place. "Standing is a threshold issue, determining whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995). "In order to show standing, the plaintiffs must show that (1) they suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court." *Wenzel v. Sand Canyon Corp.*, 841 F. Supp. 2d 463, 478 (D. Mass. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) *abrogated on other grounds by Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013). Additionally, "standing has a prudential aspect, which overlays the constitutional dimensions." *Culhane*, 708 F.3d at 290. "These prudential considerations ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party)…" *Id*. (internal quotation omitted).

Applying these principles to the subject at hand, "several courts have ruled that mortgagors lack standing to challenge mortgage assignments because they are neither parties to nor third-party beneficiaries of the assignments." *Culhane*, 708 F.3d at 290 (citing cases). In *Culhane* the United States Court of Appeals for the First Circuit carved out an exception to this rule. Applying Massachusetts law, the First Circuit held that "a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee." *Id*. at 291. In other words, a mortgagor has standing to challenge a mortgage assignment in order to prevent or set aside a foreclosure sale on the basis that the foreclosing entity does not or did not own the mortgage in accordance with Massachusetts law.

11

The First Circuit described its holding as "narrow" and stated that mortgagors have standing to challenge mortgage assignments as "invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)" as opposed to "voidable at the election of one party but otherwise effective to pass title." *Id.*

In her claim objection, Ms. Jackson is seeking neither to stop an impending foreclosure sale nor to set one aside. She has objected to Capital One's proof of claim in her bankruptcy case by, among other things, attacking Capital One's status as mortgagee. A mortgagee like Capital One files a proof of claim to preserve its right to payment and the right to exercise other available remedies, including the right to foreclose. But Capital One is not seeking relief from the automatic stay in order to foreclose at this juncture. In *Culhane*, the court found that the injury prong of the test for standing was satisfied by the fact that a foreclosure sale had already occurred and that the alleged injury could be redressed by declaring that the foreclosing entity lacked the authority to foreclose. *Culhane*, 708 F.3d at 289-90. Here, Ms. Jackson does not challenge the validity of the mortgage itself, so, a finding that one of the mortgage assignments in the chain of assignments is void, and thus that Capital One does not own the mortgage, would not change the fact that Ms. Jackson is liable, at least *in rem*, to someone. Ms. Jackson has failed to satisfy the injury prong of the standing test articulated in *Wenzel*.

Furthermore, having already determined the *prima facie* validity of Capital One's claim to be the holder of the promissory note, Capital One would still have a valid secured claim in Ms. Jackson's bankruptcy even if it did not own the mortgage. Massachusetts is one of a minority of states that does not subscribe to the rule that a mortgage must follow the note in order for it to be enforceable. *Marron*, 455 B.R. at 6. "In Massachusetts, when a mortgage and applicable note are

12

owned by different entities, the mortgagee is deemed to hold the mortgage in trust for the owner of the note, and the note owner has the right to seek a judicial order requiring the mortgagee to assign the mortgage to it." *Id.* (citing *Ibanez*, 458 Mass. at 653, 941 N.E.2d at 54). "Unless and until the mortgage is thus assigned, however, the mortgagee retains legal title to the mortgage, albeit with a fiduciary duty to act on behalf of the owner of the note which holds a beneficial interest in the mortgage." *Id.* Under Massachusetts law, Capital One could compel the mortgage owner, whoever that may be, to transfer ownership of the mortgage so that it could foreclose in the future. *Id.* Put another way, at this point there is no injury to Ms. Jackson so a ruling in her favor would not assist her. Hence the redressability prong of the standing test is not satisfied either.

For these reasons, I find that the narrow exception in *Culhane* to the general rule that mortgagors lack standing to challenge mortgage assignments does not apply in this case. Thus, Ms. Jackson lacks standing to object to Capital One's proof of claim on the basis that one or more of the mortgage assignments in its chain of ownership is void.

But even if Ms. Jackson did have standing to challenge the mortgage assignments, her objection would fail on the merits. Without belaboring the point, it is by now well-settled that in circumstances similar to those here MERS, as nominee, has the authority under Massachusetts law to assign mortgages. *See Marron*, 455 B.R. at 7-8*; Culhane*, 708 F.3d at 291-94. Further, under Massachusetts law the assignments attached to Capital One's proof of claim are facially valid. MASS. GEN. LAWS ch. 183, § 54B provides that assignments executed before a notary public by an individual purporting to be a vice president of the assigning entity are binding on both parties and neither party must prove the authority of the signatory. *See Marron*, 455 B.R. at 8; *Culhane*, 708 F.3d at 293-94. In its amended proof of claim, Capital One provides copies of assignments from

13

MERS to Countrywide f/b/o ING and from Countrywide f/b/o ING to ING Bank, FSB, as well as evidence of its merger with ING Bank, FSB. Accordingly, Capital One has established a clear chain of assignment and its assertion that it owns the mortgage enjoys *prima facie* validity. As with her objection to Capital One's status as promissory note holder, Ms. Jackson's unsupported assertions regarding the validity of the mortgage assignments fail to qualify as the substantial evidence required to rebut the *prima facie* validity of Capital One's claim. *See Perron*, 474 B.R. at 313-14.

For the forgoing reasons, I find that Ms. Jackson has failed to rebut the *prima facie* validity of Capital One's claims to be the holder of the promissory note and owner of the mortgage. As such, Ms. Jackson's objection the Capital One's claim cannot succeed on the basis that Capital One does not have the authority to enforce the promissory note or mortgage.

      **(ii)**    *Ms. Jackson's Counterclaim*

The counterclaim asserted by Ms. Jackson in her objection to Capital One's proof of claim appears to be an attempt either to obtain relief now for claims asserted but not yet decided in the adversary proceeding or to re-litigate claims already decided therein. To the extent that Ms. Jackson's counterclaim seeks money damages flowing from the 2008 foreclosure, this claim was embodied in Counts II, III, and IV of the complaint in the adversary proceeding and has been dismissed. Ms. Jackson is precluded from relitigating those claims in her claim objection. *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 770 (1st Cir. 2010) ("Collateral estoppel, now often called issue preclusion, prevents a party from relitigating issues that have been previously adjudicated."). To the extent Ms. Jackson's counterclaim seeks damages for causes of action asserted in Count VI of her complaint in the adversary proceeding, they are more appropriately

14

determined there. *See* FED. R. BANKR. P. 3007(d). Accordingly, Ms. Jackson's counterclaim does not warrant any reduction to Capital One's claim at this juncture.

      **(iii)** *Post-Petition Arrears Calculation*

In a narrative attached to its amended proof of claim, Capital One discusses what it believes to be the amount of "post-petition" arrears[10] owed by Ms. Jackson under the terms of the note. In her supplemental objection Ms. Jackson disputes Capital One's narrative on this point. Ms. Jackson's objection is unnecessary. The only amounts relevant to Capital One's amended proof of claim are those amounts set forth in the official form itself, i.e. the total amount of its secured claim and the total amount of pre-petition arrears. *See* FED. R. BANKR. P. 3001(a) ("A proof of claim shall conform substantially to the appropriate Official Form"). Claimants may, and in some instances are required to, attach additional documentation to the proof of claim official form. *See* FED. R. BANKR. P. 3001(c)(1). But this additional documentation is only considered insofar as it is necessary to substantiate the total amount claimed (and total arrears, if applicable) on the official form. Capital One's statements regarding post-petition arrears in the narrative attached to its proof of claim are the equivalent of dicta. Any dispute about the propriety or amount of post-petition arrears will not be resolved in this contested matter.

      **(iv)** *Accounting Issues*

With regard to the accounting attached to Capital One's amended proof of claim, Ms. Jackson does not allege that the accounting fails to credit her for all payments made over the life of the loan. In any event, Ms. Jackson does not offer any evidence, in the form of canceled checks or

---

[10] In the narrative, Capital One describes the amount as "post-petition" arrears, but the time period referenced runs from January 2013 to October 2013. Presumably Capital One means post-conversion arrears as the petition date in this case was February 22, 2010. The case was reopened and subsequently converted to chapter 13 on January 23, 2013.

15

other evidentiary quality materials, to rebut the presumption of *prima facie* validity of Capital One's claim that the accounting reflects an accurate payment history. In her supplemental objection Ms. Jackson does, however, take issue with three components of Capital One's claim: escrow advances, attorneys' fees, and charges while she was not in possession of the condominium unit.

Ms. Jackson objects to the escrow advances portion of Capital One's total secured claim to the extent that the total includes amounts other than taxes or fails to demonstrate compliance with 12 U.S.C. § 2609. She does not, however, identify specific escrow payments as improper or specific violations of the statute and the accounting itself does not manifest such infirmities, nor is it the burden of Capital One to establish compliance.[11] Ms. Jackson's arguments regarding escrow

---

[11] Under § 2609, in addition to taxes, lenders may require escrow account deposits to provide for insurance premiums or "other charges with respect to the property." 12 U.S.C. § 2609. It is Ms. Jacksons position that Capital One may only require escrow deposits for taxes since insurance premiums are included in her condominium association dues. But Ms. Jackson provides no evidence to support this assertion, no evidence that she has actually been paying condominium dues, and does not point to any escrow payments related to insurance premiums in the accounting.

Further, the majority of circuits, as well as the United States District Court for the District of Massachusetts, have held that § 2609 does not provide a private right of action. *See Okoye v. Bank of New York Mellon*, No. 10-11563, 2011 WL 3269686, at *16 (D. Mass. July 28, 2011) (citing cases). Ms. Jackson admits as much in her supplemental objection. But that does not necessarily mean that bankruptcy courts will allow lenders to ignore the provisions of § 2609 with impunity. For example, in *In re Johnson*, 384 B.R. 763, 775-77 (Bankr. E.D. Mich. 2008), the court sustained the debtor's objection to the lender's proof of claim and found that the lender waived any right to collect certain escrow-related arrearages by failing to comply with the escrow shortage notice requirements of § 2609. The court applied the shifting burden of proof discussed *infra* in Part III.1. and found that the debtor's unrefuted testimony that he had never received the required notices was enough to rebut the presumption of *prima facie* validity of the lender's proof of claim. *Id.*

Here, in her supplemental objection, Ms. Jackson simply states that Capital One did not provide evidence of compliance with § 2609 in its amended proof of claim. Nothing in § 2609 changes the standard otherwise applicable in proof of claim objection matters. Capital One need only comply with FED. R. BANKR. P. 3001 in order to avail itself of the presumption of *prima facie* validity of its claim, which does not require proof of compliance with every mortgage-related regulation in

advances, therefore, do not constitute the substantial evidence required to rebut the presumption of *prima facie* validity of Capital One's proof of claim and thus no reduction in Capital One's claim is warranted on the basis of those arguments. *See Perron*, 474 B.R. at 313-14.

Next, Ms. Jackson objects to the inclusion of attorneys' fees in Capital One's claim as being in in violation of § 506(c) of the Bankruptcy Code.[12] But, there is nothing in Capital One's amended proof of claim or documentation attached thereto that would suggest that its claim includes attorneys' fees and Ms. Jackson has not presented any evidence that it does. Ms. Jackson's argument regarding attorneys' fees does not constitute the substantial evidence required to rebut the presumption of *prima facie* validity of Capital One's proof of claim and thus no reduction in Capital One's claim is warranted on that basis either. *See Perron*, 474 B.R. at 313-14.

Finally, Ms. Jackson objects to any portion of Capital One's claim that represents amounts accrued during the time that she was displaced from residing in the condominium unit. In her supplemental objection signed under oath Ms. Jackson asserts that she vacated the condominium unit on or before February 6, 2008 in accordance with the terms of the Move Out Agreement and that she did not move back in to the condominium unit until June 2012. While I found, in the context of the adversary proceeding, that the release in the Move Out Agreement required dismissal of money damages claims arising out of the 2008 foreclosure, Ms. Jackson accrued those claims either prior to or at the time she signed the Move Out Agreement. Ms. Jackson's argument here is in the nature of a defense to Capital One's demand for payment subsequent to her signing

---

existence. It is Ms. Jackson's burden to provide evidence of non-compliance and she has not.

[12] Under § 506(c), a secured claimant may only collect attorneys' fees, costs or other charges provided for in the security agreement to the extent that the value of the collateral exceeds the amount of the secured claim. Here, Ms. Jackson asserts that the value of the condominium unit is less than the value of Capital One's secured claim.

17

the Move Out Agreement. As such, the Move Out Agreement release does not apply and thus Ms. Jackson has carried her burden of presenting substantial evidence to rebut the *prima facie* validity of Capital One's proof of claim to the extent it includes amounts accrued during the time period when Ms. Jackson did not reside in the condominium unit.

## IV. The Result

For the reasons set forth above, Ms. Jackson's objection to Capital One's proof of claim will be overruled except as to the question of whether and in what amount Capital One's claim should be reduced to reflect the time that Ms. Jackson was displaced from residing in the condominium unit. For the convenience of the parties and in the interest of judicial economy, this remaining issue will be consolidated with adversary proceeding number 13-01064. Separate orders consistent with this memorandum shall issue.

Dated: December 31, 2013                                By the Court,

                                                        /s/ Melvin S. Hoffman
                                                        _____
                                                        Melvin S. Hoffman
                                                        U.S. Bankruptcy Judge


Counsel Appearing:   David G. Baker, Esq.
                     Boston, MA
                     for the debtor, Kimmy Jackson

                     Alyse M. Aruch, Esq.
                     McCarter & English, LLP
                     Boston, MA
                     for Capital One, N.A.